■ In the Matter of JOSEPH G., Alleged to be the Child of a Mentally Ill Parent and to be Permanently Neglected. EDWARD K. KAPLAN, as Law Guardian, Appellant; GREENE COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Respondents. (And Another Related Proceeding.) [807 NYS2d 149]—

Crew III, J.P. Appeal from an order of the Family Court of Columbia County (Nichols, J.), entered June 4, 2004, which, inter alia, dismissed petitioner's application, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate the child of respondent Beatrice G. to be, inter alia, the child of a mentally ill parent.

Respondent Beatrice G. (hereinafter respondent) is the biological mother of Joseph G. (born in November 1999), the child who is the subject of these proceedings. Joseph was placed in foster care in September 2000 and, for most of his placement, resided with his foster parents. Respondent Greene County Department of Social Services (hereinafter DSS) initially took the position that respondent was mentally ill and, hence, unfit to parent Joseph. Thus, DSS's proposed plan was to terminate respondent's parental rights based upon her mental illness or mental retardation. In or about March 2003, however, apparently in response to updated mental health evaluations, DSS changed its permanency goal from termination of parental rights to reunification. In response, the foster parents commenced a proceeding to terminate respondent's parental rights based upon respondent's alleged mental illness and permanent neglect of Joseph. That proceeding was transferred to Columbia County Family Court in October 2003.

When Joseph was removed from the foster parents' home in December 2003, Family Court permitted petitioner, as the child's

Law Guardian, to commence the instant proceeding pursuant to Social Services Law § 384-b to terminate respondent's parental rights based upon mental illness or mental retardation and permanent neglect.[1] This matter proceeded to a hearing in February 2004, at which DSS was directed to present proof in support of its proposed reunification of respondent and her son. Following such proof, petitioner and the foster parents presented testimony in support of their respective petitions to terminate respondent's parental rights. At the conclusion of a lengthy hearing, at which various mental health evaluators appeared and testified, Family Court dismissed the respective petitions and directed DSS to formulate a plan to return Joseph to respondent. This appeal by petitioner ensued.

We affirm. Petitioner initially contends that Family Court erred in failing to expressly rule on that portion of his petition that sought to terminate respondent's parental rights based upon permanent neglect. In this regard, even a cursory review of the record reveals that the bulk of both the underlying petition and the proof presented at the hearing dealt with respondent's alleged mental illness. To that end, petitioner devoted significant effort to attempting to either establish that respondent was mentally ill or discredit the testimony offered by DSS's witnesses attesting to her mental fitness. Having charted that particular course and having offered little evidence as to respondent's overall capabilities as a parent,[2] petitioner cannot now be heard to complain that Family Court failed to expressly address his alternate grounds for termination. Thus, to the extent that Family Court erred in this regard, we deem such error to be harmless.

Nor are we persuaded that Family Court erred in failing to compel DSS to support petitioner's efforts to terminate respondent's parental rights. Pursuant to Social Services Law § 384-b (3) (l) (i), DSS was required to file a petition to terminate respondent's parental rights unless, among other things, it documented a compelling reason why such a petition would not be in Joseph's best interest or demonstrated that it had not in fact provided respondent with whatever services it deemed necessary for the safe return of the child. In the event that DSS failed to discharge its statutory duty in this regard,

---

**1.** Joseph eventually returned to the foster parents and their petition was reinstated.

**2.** Although petitioner presented proof that respondent allowed Joseph to sit too close to the television set, routinely fed him "Happy Meals" from McDonald's and at times selected age-inappropriate videos for him to watch, such conduct, while perhaps reflecting poor parental judgment, does not rise to the level of permanent neglect.

Social Services Law § 384-b (3) (1) (iv) permitted, among others, the child's law guardian to file such a petition, which DSS was required to join.

Even accepting that DSS failed to satisfy the requirements of Social Services Law § 384-b (3) (1) (i) and erred in failing to "join" petitioner's petition to terminate respondent's parental rights, any such error was harmless given that there simply is nothing in the statute that compels DSS to adopt or advocate a particular position at the ensuing evidentiary hearing. Stated another way, petitioner cannot force DSS to lobby for the termination of respondent's parental rights if, in its judgment, such action is not in Joseph's best interest. These proceedings came before Family Court in a somewhat unique procedural posture and Family Court, in our view, appropriately held the parties to their respective burdens of proof. Petitioner's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.